IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSHUA KEZIAH,                          :
    Plaintiff,                          :
                                        :
v.                                      :    CIVIL ACTION NO. 25-CV-3793
                                        :
JOSEPH TERRA, *et al.*,                 :
    Defendants.                         :

**MEMORANDUM**

**BEETLESTONE, C.J.**                                    **APRIL 27  , 2026**

Currently before the Court is an Amended Complaint ("AC" (ECF No. 9)) filed *pro se* by Plaintiff Joshua Keziah, a convicted prisoner currently incarcerated at SCI Smithfield. The AC, filed pursuant to 42 U.S.C. § 1983, asserts violations of Keziah's rights arising from events that allegedly occurred at SCI Phoenix. Keziah asserts claims against the following SCI Phoenix employees: Superintendent Joseph Terra, Superintendent Assistant Christina Owens, and Major Wychunis. (AC at 2.) He asserts his claims against the Defendants in both their individual and official capacities. (*Id.*) For the following reasons, the Court will dismiss with prejudice Keziah's claims based on the Defendants' handling of grievances and efforts to interfere with the grievance process, their alleged failure to adhere to Pennsylvania Department of Corrections policies, his First Amendment retaliation claims, and his Eighth Amendment claims. The remainder of Keziah's AC will be dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Keziah will be granted leave to file a second amended complaint.

## I.   FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[1]

The gravamen of Keziah's original Complaint was that his scheduled wedding was delayed while he was temporarily housed in the Restricted Housing Unit ("RHU") between November 5 and November 7, 2024, in violation of his First and Fourteenth Amendment rights. *Keziah v. Terra*, No. 25-3793,2025 WL 2936888, at *1 (E.D. Pa. Oct. 15, 2025).  Upon statutory screening, the Court dismissed with prejudice Keziah's claims against Wychunis to the extent they were based on Wychunis's participation in the grievance process, and his request for transfer to a different correctional facility.  *Id*. at *4.  The remainder of the Complaint was dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and for failure to comply with Federal Rule of Civil Procedure 8.  *Id*.  Keziah was granted leave to file an amended complaint.  *Id*.  The AC is ripe for screening.

Keziah alleges that he was scheduled to marry his fiancé Tori M. Topper on November 7, 2024 between 4:00 and 5:00 p.m.at SCI Phoenix.  (AC at 3.)  Although he satisfied all of the requirements outlined in the Department of Corrections ("DOC") policy manual, and was approved to be married at that time, the ceremony did not take place as scheduled, apparently because Keziah was being held in restricted housing.  (*Id*.)  Keziah filed a grievance following the cancellation of the ceremony and was told by one of the Defendants that the cancellation was the result of his own request to be placed in protective custody, and by another that it was because he notified staff that he was to carry out a gang-related hit.  (*Id*.)  Neither of these assertions were true, according to Keziah.  (*Id*.)  He alleges, instead, that he was placed in

---

[1] Unless otherwise noted, the factual allegations set forth in this Memorandum are taken from Keziah's AC (ECF No. 9).  The Court adopts the pagination supplied by the CM/ECF docketing system.  Where appropriate, grammar, spelling, and punctuation errors in Keziah's pleading will be corrected for clarity.

Administrative Custody but was not told the reason for the placement and did not receive a hearing within 72 hours as required by DOC policy and his due process rights.  (*Id*.)

Keziah claims that the Defendants retaliated against him by rejecting his grievance and by refusing to escort him from the RHU to his wedding ceremony.  (*Id*. at 3-4.)  He further claims that the Defendants' rejection of his grievance was intended to deter him from filing additional grievances, in violation of his First Amendment rights.  (*Id*. at 4.)  He states that as a result of the Defendants' conduct, he has incurred costs, been transferred to a facility out of his home region, and experienced emotional distress.  (*Id*. at 6-7.)  He also claims that his relationship with his fiancé has been damaged, and that they are no longer engaged.  (*Id*. at 7.) He asserts First Amendment retaliation and free exercise claims, Eighth Amendment cruel and unusual punishment claims, and Fourteenth Amendment due process claims.  (*Id*. at 5-6.)  He seeks transfer back to a facility in his home region[2] and money damages.  (*Id*. at 7.)

## II.   STANDARD OF REVIEW

The Court has already granted Keziah leave to proceed *in forma pauperis*.  (*See* ECF No. 6.)  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the AC if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to

---

[2] This request will be denied because it is well-settled that prisoners have no inherent constitutional right to placement in any particular prison, to any particular security classification, or to any particular housing assignment.  *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (holding that the Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement); *Lane v. Tavares*, No. 14-991, 2016 WL 7165750, at *16 (M.D. Pa. July 12, 2016) (same).

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Because Keziah is proceeding *pro se*, the Court construes his allegations liberally.  *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.*  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Mala*, 704 F.3d at 245; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

Additionally, a complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8.  *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019).  To conform to Rule 8, a pleading must contain a short and plain statement showing that the plaintiff is entitled to relief.  *See* Fed. R. Civ. P. 8(a)(2).  The United States Court of Appeals for the Third Circuit

4

has explained that in determining whether a pleading meets Rule 8's "plain" statement requirement, the Court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claims." *Garrett*, 938 F.3d at 93 (citation omitted). "[A] pleading that is so 'vague or ambiguous' that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." *Garrett*, 938 F.3d at 93. The important consideration for the Court is whether "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 94.

## III.    DISCUSSION

Keziah asserts claims based on alleged violations of his constitutional rights. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

### A.    Official Capacity Claims

Keziah asserts official capacity claims against the named Defendants, all of whom are identified as employees of SCI Phoenix and, therefore, are employees of the DOC. (Compl. at

5

2.) The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Additionally, the United States Court of Appeals for the Third Circuit has held that, where a claim is filed against state officials who were not directly involved in the activities that caused the alleged constitutional violation, but are instead named as defendants because of their positions in state government, they are deemed to be sued in their official capacities and thus entitled to Eleventh Amendment immunity. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020). As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court. For this reason, Keziah's official capacity claims will be dismissed with prejudice.

However, state officials sued in their individual capacities are "persons" within the meaning of Section 1983. *See Hafer*, 502 U.S. at 31. Thus, the Eleventh Amendment does not bar suits for monetary damages brought under Section 1983 against state officials in their individual capacities. *Id.* Keziah's individual capacity claims against the Defendants are addressed below.

### B. Personal Involvement

Throughout his AC, Keziah refers to the Defendants collectively, and the AC, therefore, does not plausibly allege whether or how any of these Defendants personally engaged in conduct

6

that violated his constitutional rights.  Where there are multiple events and defendants at issue, alleging personal involvement often cannot be accomplished by repeatedly and collectively referring to the "Defendants" as a group without clarifying the specific basis for each Defendant's liability.  *See Lawal v. McDonald*, 546 F. App' x 107, 113 (3d Cir. 2014) (agreeing with the district court that the repeated and collective use of the word "Defendants" "fail[ed] to name which specific Defendant engaged in the specific conduct alleged'"); *Walker v. Wetzel*, No. 22-1357, 2022 WL 4103632, at *3 (3d Cir. Sept. 8, 2022) (*per curiam*) (affirming district court's conclusion that generalized reference to "medical staff and officers" did not allege personal involvement).  As a result of his manner of pleading, Keziah has failed to state plausible claims against any of the named Defendants, and his claims will be dismissed.

The Court notes, too, that because Keziah does not attribute any of the conduct described in the AC to any particular Defendant, the AC fails to provide fair notice of the grounds upon which his claims against each Defendant rests, as required by Rule 8.  *See Afzal v. N.J. Bd. of Med. Examiners*, No. 22-1609, 2022 WL 4533826, at *3 (3d Cir. Sept. 28, 2022) (*per curiam*) (affirming dismissal of complaint pursuant to Rule 8 because plaintiff failed to plead adequate factual content to support a reasonable inference that defendants were liable and failed to present cognizable legal claims to which defendants could respond on the merits).  Keziah's AC, as pled, is undeveloped and not plausible and will be dismissed.  He will be granted leave to file a second amended complaint to "flesh out his allegations by . . . explaining in [the second] amended complaint the 'who, what, where, when and why' of his claim."  *See Davis v. Internal Revenue Serv.*, No. 21-4728, 2022 WL 407639, at *3 (E.D. Pa. Feb. 9, 2022); (citing *Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019)).  If he

7

chooses to file a second amended complaint, Keziah should be mindful of the Court's

consideration of the plausibility of his claims, which is addressed below.

### C.      Claims Based on Denial of Grievance

Keziah alleges that the Defendants improperly rejected his grievances in an effort to deter

him from filing additional grievances.  (AC at 3-4.)  However, claims based on the handling of

prison grievances fail because "prisoners do not have a constitutional right to prison grievance

procedures."  *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey*

*v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.

1991) (*per curiam*)).  Accordingly, allegations such as those raised by Keziah here predicated on

failures of the grievance process or improper handling of or response to grievances do not give

rise to a constitutional claim.  *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d

Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-

standing constitutional right to an effective grievance process, Woods cannot maintain a

constitutional claim against Lucas based upon his perception that she ignored and/or failed to

properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F.

App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a

constitutionally protected right to the prison grievance process" and that "a state grievance

procedure does not confer any substantive constitutional right upon prison inmates" (internal

quotations and citations omitted)).

To the extent Keziah is asserting that the Defendants' conduct constitutes interference

with his future participation in the grievance process, this claim is not plausible.  Because a

prisoner has no constitutional right to a grievance procedure, it follows that no constitutional

claim can be based on a prison official's restriction on or interference with the grievance process.

*Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007) (*per curiam*) (holding that, because a prisoner has no right to a grievance process, "defendants' alleged obstruction of such procedures is not independently actionable"); *Austill v. Terra*, No. 25-0238, 2025 WL 1770819, at *3 (E.D. Pa. June 26, 2025) ("Because Austill has no constitutional right to a grievance procedure, it follows that no constitutional claim can be based on a prison official's interference with the grievance process.") (citing *Rosado v. Virgil*, No. 09-156, 2011 WL 4527067, at *9 (W.D. Pa. Sept. 28, 2011)).  Keziah's claims based on the Defendants' handling of his grievances or efforts to restrict him from filing future grievances will be dismissed with prejudice.

### D.    Retaliation Claims

#### 1.    Claims Based on Denial of Grievance and Refusal to Escort Keziah to His Scheduled Wedding Ceremony

Keziah claims that the Defendants retaliated against him by rejecting his grievance and by refusing to escort him to his marriage ceremony.  (AC at 3-4, 6.)  The Court understands Keziah to attribute the retaliation to his filing of a grievance.  Although a prisoner has no constitutional right to a grievance process, *see Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*), a prisoner can state a First Amendment claim based on retaliation for filing a grievance.  *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (*per curiam*) (holding that a prisoner's filing of a grievance is constitutionally protected conduct) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003)); *Peterson v. Franrak*, No. 25-4538, 2025 WL 3485825, at *5 (E.D. Pa. Dec. 4, 2025).  In order to state a plausible First Amendment retaliation claim, a prisoner must allege that:  (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *Mitchell*, 318

9

F.3d at 530 (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*).

"An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'" *Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original). For example, "being placed in lockdown, being moved to restricted housing, and being issued misconduct charges are more than '*de minimis*' adverse actions." *See Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (*per curiam*) (quoting *McKee*, 436 F.3d at 170); *see also Mitchell*, 318 F.3d at 530-31 ("Mitchell's allegation that he was falsely charged with misconduct in retaliation for filing complaints against Officer Wilson implicates conduct protected by the First Amendment."); *Watson*, 834 F.3d at 423 (concluding that a prisoner "clearly suffered an adverse consequence when [an official] charged him with a Class 1 misconduct"); *Robinson v. Palco*, No. 21-2987, 2022 WL 3009746, at *3 (3d Cir. July 29, 2022) (*per curiam*) (same); *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (holding that the termination of prison employment constitutes adverse action for retaliation purposes).

The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *See Watson*, 834 F.3d at 422. For example, allegations of (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link may be sufficient to allege a causal link. *Watson*, 834 F.3d at 424. However, "the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." *Id.* (citation footnote omitted). Moreover, causation, like any other fact, can be pled plausibly from the

10

"record as a whole." (*Id.*)  But "where the temporal proximity is not so close as to be 'unduly suggestive,'" the appropriate test is "timing plus other evidence." (*Id.*)

Keziah's filing of a grievance was constitutionally protected activity.  He claims that the Defendants retaliated against him (1) for filing the grievance by denying it, and (2) by refusing to escort him from the RHU to his scheduled wedding ceremony.  (AC at 3-4.)  Although the submission of grievances is a protected activity, "[t]he denial of grievances is not an 'adverse action' for retaliation purposes." *Owens v. Coleman*, 629 F. App'x 163, 167 (3d Cir. 2015) (*per curiam*) (affirming dismissal of First Amendment retaliation claim where claim was based on argument that prison officials denied grievances as retaliation for filing those grievances); *see also Burgos v. Canino*, 641 F. Supp. 2d 443, 455 (E.D. Pa. 2009) ("The mere denial of grievances does not rise to the level of adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights."), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (*per curiam*).  Keziah's claim that the Defendants refused to escort him to his scheduled wedding ceremony in retaliation for his filing of grievance does not support a plausible claim, because, as pled, that conduct preceded his filing of the grievance, and, indeed, was the event Keziah sought to grieve.  (*See* AC at 3-4.)  In other words, a grievance filed after the fact could not have been a substantial or motivating factor in the officials' failure to escort him to the wedding.  Similarly, although Keziah suggests that his placement in the RHU was retaliatory, Keziah states he was placed in the RHU before his wedding was cancelled and before he filed his grievance, due to his alleged involvement in a gang hit.  Accordingly, Keziah's retaliation claims will be dismissed.  He will not be granted leave to amend this claim, because to do so would be futile.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).

### 2.    Claims Based on Retaliatory Transfers

Keziah also alleges that the Defendants transferred him to Administrative Custody in retaliation for filing a grievance and in an effort to deter him from filing further grievances. (AC at 4.)  He further alleges that he has been transferred out of his home region.  (*Id.* at 7.)  While a convicted prisoner has no inherent constitutional right to placement in any particular prison, to any particular security classification, or to any particular housing assignment.  *See Wilkinson*, 545 U.S. at 221-22 (holding that the Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement), placement in restricted housing constitutes an adverse action for purposes of a First Amendment retaliation claim.  *See Palmore*, 813 F. App'x at 70 (citations omitted); *Akubu v. George W. Hill Corr. Facility*, No. 24-6929, 2025 WL 675442, at *5 (E.D. Pa. Feb. 28, 2025) (finding upon statutory screening that retaliation claim based on transfer from worker cell immediately following inmate advising warden that he intended to file lawsuit was plausible).  Additionally, "transfer to an institution whose distance [makes] regular family visits impossible" is also sufficiently adverse to support a retaliation claim.  *Snider v. Alvarez*, No. 18-801, 2020 WL 6395499, at *17 (M.D. Pa. Nov. 2, 2020) (quoting *Dunbar v. Barone*, 487 F. App'x. 721, 723 (3d Cir. 2012) (further citations omitted).  *See also Stanley v. Litscher*, 213 F.3d 340, 343 (7th Cir. 2000) ("Retaliation is a potential wrong, however, even when a transfer does not involve a liberty or property interest.").

Keziah's claims based on transfer into Administrative Custody suffers from the same problem as his retaliation claims based on the denial of his grievance and the refusal to escort him to his scheduled wedding ceremony – the transfer to Administrative Custody preceded the filing of the grievance.  Accordingly, any retaliation claims based on Keziah's initial transfer into Administrative Custody will be dismissed with prejudice.  To the extent he seeks to assert a

claim based on the length of his assignment to Administrative Custody, the claim is not developed because there are no factual allegations stating how long the assignment lasted.  To the extent Keziah seeks to assert a claim based on transfer to a different correctional facility, that claim, too, is undeveloped as there are no factual allegations in the AC describing the circumstances surrounding the transfer.  This claim will be dismissed without prejudice and Keziah will be granted leave to amend it.

### E.    Claims Based on Failure to Adhere to DOC Policies

Keziah alleges that he satisfied all of the requirements outlined in the DOC policy regarding marriage, that his ceremony was approved and scheduled, and that the Defendants refused to escort him to the ceremony from the RHU, although DOC policy does not prohibit RHU inmates from being married.  (AC at 3-4.)  He also alleges that he was placed in Administrative Custody without notice or a reason and was not afforded a hearing to challenge the placement, in violation of DOC policy.  (*Id*. at 3.)  The Court understands Keziah to be asserting a claim based on the Defendants' failure to adhere to DOC policy.  However, "[a]s many courts have held, corrections officials cannot be held liable for failing to conform to procedures outlined in inmate handbooks and other internal prison procedures." *Bowman v. Wetzel*, No. 20-135, 2020 WL 3258946, at *6 (W.D. Pa. June 16, 2020) (citing cases); *see also Hernandez-Santana v. Little*, No. 24-6447, 2025 WL 2538435, at *5 (E.D. Pa. Sept. 3, 2025) ("a violation of internal prison procedures does not create a constitutional violation"); *Curry v. McCann*, No. 18-5444, 2019 WL 77441, at *7 (E.D. Pa. Jan. 2, 2019) ("Even if Curry was asserting a claim against C.O. McCann based on this questioning, 'a prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983.'") (citing *Laufgas v. Speziale*, No. 04-1697,

13

2006 WL 2528009, at *7 n.7 (D.N.J. Aug. 31, 2006)).  Accordingly, because a failure to adhere to policies is not alone a constitutional violation, these claims will be dismissed with prejudice.

### F.    Claims Based on Interference With Religious Freedom

Keziah claims that he has "an absolute right to marry his fiancé" pursuant to the First Amendment, and that the Defendants' conduct interfered with that right.  (AC at 5.)  As pled, this claim is not plausible.  The Supreme Court has recognized that the First Amendment guarantees that all prisoners must be afforded reasonable opportunities to exercise their religious freedom.  *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972); *see also O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion.") (citations omitted).  However, in order to state a plausible Free Exercise claim, a plaintiff must allege a "substantial burden" on the exercise.  *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981); *Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972).  Moreover, although inmates retain certain protections afforded by the First Amendment, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  *O'Lone*, 482 U.S. at 348 (quotations omitted).  While the federal courts must take cognizance of valid constitutional claims of prison inmates, the Supreme Court repeatedly has cautioned that the task of prison administration has been committed to the responsibility of the legislative and executive branches of government; federal courts should be reluctant to second guess these authorities.  *See, e.g., Turner v. Safley*, 482 U.S. 78, 84 (1987) (setting forth four-part test to determine whether inmate's constitutional rights have been impermissibly burdened); *O'Lone*, 482 U.S. at 353.  The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or

14

practice and, if so, whether a compelling governmental interest justifies the burden. *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989) (internal citations omitted).

"The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men." *Toms v. Taft*, 338 F.3d 519, 526 (6th Cir. 2003) (quoting *Loving v. Virginia*, 388 U.S. 1, 12 (1967)). While inmates have a right to marry, the Supreme Court has held that this right may be restricted where the restriction is reasonably related to a legitimate penological interest. *Turner*, 482 U.S. at 79. In *Turner*, the Court struck down a Missouri regulation prohibiting prisoners from marrying unless the superintendent found compelling reasons to permit marriage. *Id.* at 80. The Court stated: "Although prison officials may regulate the time and circumstances under which a marriage takes place, and may require prior approval by the warden, the almost complete ban on marriages here is not, on the record, reasonably related to legitimate penological objectives." *Id*. at 79. Of note, courts have also held "that security concerns can justify limiting the rights of prisoners in protective custody." *Houseknecht v. Doe*, 653 F. Supp. 2d 547, 557 (E.D. Pa. 2009) (citing cases).

Keziah claims that the Defendants refused to escort him to his marriage ceremony, and the Court infers that this was the result of Keziah's assignment to the RHU at the time the ceremony was scheduled. Keziah does not allege that any of the Defendants have imposed an absolute prohibition on him, but only that the circumstance of his placement in Administrative Custody warranted a delay in the ceremony. *See, e.g.*, *Miller v. Wenerowicz*, 135 F. Supp. 3d 306, 311–12 (E.D. Pa. 2015), *aff'd*, 648 F. App'x. 161 (3d Cir. 2016) (*per curiam*) (granting summary judgment on qualified immunity grounds to superintendent of prison who delayed for ten months approval of inmate's request to marry because it was not clearly established that

delay would violate inmate's constitutional rights).  Notably, in his AC, Keziah does not allege that since the filing of his original Complaint, he has sought permission again to be married and has been denied, or that the Defendants have otherwise interfered with his right to marry. Accordingly, this claim is not plausible as pled and will be dismissed.  Keziah will be granted leave to amend this claim.

### G.    Claims Based on Denial of Due Process

Keziah alleges that the Defendants failed to advise him of the reason for his placement in Administrative Custody, and that he was not provided with a hearing or other opportunity to be heard or to challenge the placement, in violation of his Fourteenth Amendment due process rights.  (AC at 6.)  In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court held that to assert a due process claim based on placement in disciplinary custody, a prisoner must allege facts showing that the placement constituted "atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id*. at 486.  For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See id.* at 484. "When considering whether an inmate's placement in segregated housing triggers a legally cognizable interest courts should consider: (1) the amount of time spent in segregation; and (2) whether the conditions of segregation were significantly more restrictive than those imposed on other inmates in segregation." *Allah v. Bartkowski*, 574 F. App'x 135, 139 (3d Cir. 2014); *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 848 F.3d 549, 560 (3d Cir. 2017) (stating that in deciding whether conditions are atypical and significant for purposes of establishing a liberty interest, a court must consider "(1) the duration of the challenged conditions; and (2) whether the conditions overall imposed a significant hardship in relation to the ordinary incidents of prison life.").  In

16

determining whether a hardship is atypical or significant, the relevant comparator is the general population. *Williams* at 564.

In *Sandin*, the Supreme Court concluded that placement in disciplinary segregation for thirty days did not deprive the inmate of a protected liberty interest. *See Sandin*, 515 U.S. at 486. Other courts have gone much further in finding that the time spent in disciplinary segregation did not constitute an atypical hardship for a convicted prisoner. *See*, *e.g.*, *Williams v. Bitner*, 307 F. App'x 609, 611 (3d Cir. 2009) (no liberty interest triggered by 90-day placement in disciplinary segregation); *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (no liberty interest triggered by seven-month placement in disciplinary confinement). Moreover, "a thorough investigation is not a requirement of due process in the prison disciplinary setting." *See Parks v. O'Shaughnessy*, No. 14-1268, 2016 WL 4385869, at *4 (M.D. Pa. May 3, 2016); *see also Moles v. Holt*, 221 F. App'x 92, 96 (3d Cir. 2007) (concluding that "a failure to conduct a prompt and thorough investigation prior to a disciplinary hearing does not rise to the level of a due process violation"). Thus, absent a protected liberty interest, a prisoner cannot maintain claims regarding alleged procedural defects prior to and during his misconduct proceedings.

Keziah alleges that he was not provided with notice or a reason for his placement in Administrative Custody and was not provided with an opportunity to be heard following the placement. He does not state how long he was confined to the RHU, and without this information the Court cannot confidently assess the plausibility of his due process claim. This claim will be dismissed without prejudice, and Keziah will be granted leave to amend it.

### H. Eighth Amendment Claims

Finally, in addition to his First Amendment claim, Keziah claims that the Defendants subjected him to cruel and unusual punishment, in violation of his Eighth Amendment rights,

when they delayed his wedding ceremony.  (AC at 5.)  "To determine whether prison officials have violated the Eighth Amendment, we apply a two-prong test:  (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberately indifferent to inmate health or safety.'"  *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (alterations omitted)). Such necessities include food, clothing, shelter, medical care, and reasonable safety.  *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000).  "[S]o long as the conditions of . . . confinement are not foul or inhuman, and are supported by some penological justification, they will not violate the Eighth Amendment."  *Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  Keziah's claims that the delay of his wedding arising from his assignment to Administrative Custody does not rise to the level of an Eighth Amendment violation because he cannot plausibly allege that the deprivation resulted in the denial of one of life's necessities nor, as pled, did the denial lack penological justification.  For these reasons, Keziah's Eighth Amendment claims will be dismissed with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss with prejudice Keziah's claims based on the Defendants' handling of grievances, their alleged failure to adhere to Department of Corrections Policies, his First Amendment retaliation claims based on denial of his grievance and refusal to escort him to his scheduled wedding ceremony, and his Eighth Amendment claims.

18

The remainder of Keziah's AC will be dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Keziah will be granted leave to file a second amended complaint addressing his First Amendment retaliatory transfer claims, his First Amendment interference with religious freedom claims, and his Fourteenth Amendment due process claims only.

An appropriate Order follows.

BY THE COURT:

S/ WENDY BEETLESTONE

WENDY BEETLESTONE, C.J.